[Civ. No. 1732. Fourth Appellate District.—April 7, 1936.]

HELEN P. THOMPSON, Appellant, v. BOARD OF SU-
PERVISORS OF THE COUNTY OF FRESNO et al.,
Respondents.

Everts, Ewing, Wild & Everts, A. W. Carlson, C. L. Clark and Richard H. Reeve for Appellant.

Arthur C. Shepard for Respondents.

BARNARD, P. J.—In this proceeding petitioner sought to cancel certain taxes and to remove the lien thereof from certain real property in Fresno County.

The petitioner is the widow of Claude M. Thompson, who died in April, 1930. Prior thereto he had been a partner in a business conducted under the name of Thompson Brothers, and in another business conducted under the name of Fresno Builders' Supply Company. Thereafter, his brother E. O. Thompson continued the business of these two partnerships as surviving partner. The petitioner acquired the interest of her husband in these two partnerships but the same was not distributed to her until some time after July 25, 1931. On the first Monday in March, 1931, the real property on which the business of these two partnerships was conducted stood of record in the name of the petitioner and of E. O. Thompson, each of them owning an undivided one-half interest therein. On July 25, 1931, E. O. Thompson conveyed his

half interest in this real property to the petitioner. On the first Monday in March, 1931, the assessor of Fresno County assessed certain personal property belonging to these two partnerships with the real property above referred to and thereby charged this real property with the payment of the tax on this personal property.

The petitioner brought this proceeding seeking a writ of mandate to compel the respondents to cancel the assessment of this personal property thus levied. In her petition she alleged that on the first Monday in March, 1931, she and E. O. Thompson each owned an undivided one-half interest in this real property; that thereafter E. O. Thompson conveyed to her his one-half interest therein and that she is now the sole owner thereof; that on or about the first Monday in March, 1931, the county assessor assessed a tax upon this personal property; that on that date neither the petitioner nor E. O. Thompson owned the personal property so assessed, nor was it on said date or at any time since the property of the said E. O. Thompson or of the petitioner; that on October 13, 1934, the petitioner made a written demand upon the respondent Board of Supervisors for a cancellation of said tax upon said personal property upon the ground that said assessment was illegally made, in that the personal property had been assessed to the petitioner as the owner thereof whereas the petitioner was not the owner thereof at the date of the assessment; and that the respondent board had refused to cancel the assessment.

After a trial the court entered a judgment directing the issue of the writ as prayed for as to the undivided one-half interest in said real property owned by the petitioner on the first Monday in March, 1931, but denying any relief as to the one-half interest in said real property owned by E. O. Thompson on said date and thereafter conveyed to the petitioner. From this judgment the petitioner has taken this appeal.

We are here concerned with that portion of the judgment denying relief as to that part of the real property which was owned by E. O. Thompson and later conveyed by him to the appellant. If the tax on this personal property became a lien on his interest in this real property the appellant acquired title subject to that lien. (*Reeve* v. *Kennedy,* 43 Cal. 643.)

■ It is first contended that there was no valid assessment of this personal property for the reason that it was assessed to persons other than the owner thereof. This is based upon the argument that the personal property in question was owned by the partnerships, that these partnerships were separate entities and that while E. O. Thompson owned an interest in these partnerships and the appellant had an interest in the estate of her husband which later ripened into an interest in the partnerships, neither of them owned the personal property which was assessed and therefore the assessment, not having been made to the partnership as owners of the property, was invalid and void. In so far as the validity of this assessment in itself is concerned, we think the matter is settled by the reasoning and principles set forth in *RCA Photophone, Inc.*, v. *Huffman,* 5 Cal. App. (2d) 401 [42 Pac. (2d) 1059], and by the provisions of section 3628 of the Political Code. E. O. Thompson, as surviving partner, was in possession of the personal property in question and an assessment to him was a sufficient compliance with the requirement of the code that it be assessed to the owner or to the one in whose possession or control it was.

■ It is next contended that the assessment, if valid, could not become a lien upon property owned by E. O. Thompson because he was not the owner of the personal property. Section 3717 of the Political Code provides that such a tax on personal property is a lien upon the real property of the owner thereof. We think the word ''owner'' in section 3717 of the Political Code was intended in the same sense as the word ''owned'' in section 3821 of that code, the latter section having been interpreted and applied in the case of *RCA Photophone, Inc.*, v. *Huffman, supra.* As we said in that case: ''While it is true that statutes under which taxes are levied for public purposes are to be strictly construed in favor of the individual and against the taxing power it is equally true that language must not be given an unnatural construction in order to defeat the tax legislation nor the plain intent of legislation disregarded.'' While property may be said, in a technical sense, to belong to a partnership rather than to the individuals composing the same, in a practical and very real sense such property is owned by the partners and at least for the purpose of taxation may be so considered. If a person is sufficiently an ''owner'' to permit the assessment to

be made to him, and to become liable for its payment, he is sufficiently an "owner" to permit the tax to become a lien on his real property. This conforms to common experience and if it were not true, the tax on partnership property could never be assessed with the real property of the real owners thereof but must always be collected at the time, or the personal property seized and sold. In our opinion this was not the intention of these statutes and it is not necessary to give them such an unnatural and technical construction. If E. O. Thompson, as the real owner of a half interest in this personal property and as the one in possession and control of all of it, authorized it to be assessed with his real estate, the same must be held to constitute a valid lien. He was the owner of the property, within the meaning of these statutes, and personally liable for the payment of the tax, and there is nothing in the situation to prevent the tax from becoming a lien on his real property, at his request and with his consent.

█ The appellant contends that the evidence is not sufficient to show that E. O. Thompson authorized the placing of this assessment against his half interest in the real property. The assessment record was introduced in evidence showing a direction to assess this personal property with this real property, the statement being signed by one Jeffords as manager for each partnership. There is evidence that these and all other affairs of these partnerships had been long handled as a family affair, that the assessment of this personal property had been handled in this manner for several years before the year in question, that Jeffords was trying to straighten out the affairs for the family, that E. O. Thompson had in past years directed the assessor to assess the property in this manner, and Jeffords testified that E. O. Thompson had authorized him to do so in this instance. The appellant testified that she and E. O. Thompson were the guiding spirits in the partnerships, that the tax statements were gotten out in the office, and that she could not recall whether or not E. O. Thompson had promised to pay the taxes. █ It is argued that Jeffords could have had no authority to turn in this tax statement unless the same was in writing, under the statute of frauds, as otherwise the effect would be to make E. O. Thompson undertake to answer for the debt of another. As a surviving partner E. O. Thompson was liable for all debts of the partnership and if he undertook to pay or secure such

indebtedness as this tax he was not agreeing to answer for the default of another within the meaning of the statute of frauds. While we think the evidence, with the reasonable inferences therefrom, is sufficient to sustain the finding that E. O. Thompson authorized the making of this assessment in this manner, this finding was not necessary to the judgment. ■ A statement was put in and the tax was assessed against this real property. It was the duty of E. O. Thompson to make such a statement under section 3629 of the Political Code. It must be presumed that he did his duty and there is no evidence of any other statement having been made. It must also be presumed that the assessor performed his duty in making the assessment. Moreover, this proceeding was brought by the petitioner and the burden rested upon her to show that the assessment had been illegally made against this property. There is absolutely no evidence to show that the statement was made without the authority of E. O. Thompson and the petitioner has failed to produce any evidence to show that she was entitled to relief. It is significant, in this connection, that E. O. Thompson was not called by the appellant as a witness.

It may be added that the record sufficiently shows that both E. O. Thompson and the petitioner are estopped from attacking this assessment after the lapse of several years. In so far as is shown by the record, all of the equities are on the side of the respondents.

The judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 28, 1936.